[No. AO24679. First Dist., Div. Five. Feb. 8, 1984.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF SANTA CLARA COUNTY, Respondent;
PHILIP RAINES MORTON et al., Real Parties in Interest.

**COUNSEL**

Leo Himmelsbach, District Attorney, and Judith B. Sklar, Deputy District Attorney, for Petitioner.

No appearance for Respondent.

Carleen R. Arlidge, Mark A. Arnold and Ronald W. Rose for Real Parties in Interest.

**OPINION**

**LOW, P. J.**—The first clause of Penal Code section 1540 requires that property seized under a search warrant be returned if it appears that the

property "is not the same as that described in the warrant."[1] The question before us in this writ proceeding is whether a broad description of "drug paraphernalia" in a search warrant must be deemed limited by stricter statutory and judicial definitions. We hold that for this narrow purpose the language of the warrant itself, unaffected by external definitions, controls.

Law enforcement officials in San Jose undertook to enforce new California statutes aimed at furnishers and sellers of drug paraphernalia: Health and Safety Code sections 11014.5 and 11364.7, enacted by Statutes 1982, chapter 1278, sections 1 and 2, effective January 1, 1983.[2] (Cf. Note (1983) 14 Pacific L.J. 537, 541-542.) They obtained search warrants for three business establishments. From the warrant affidavit it is apparent that the places were suspected of being what are colloquially known as "head shops." The warrants recited that there was probable cause to believe that described property "is possessed . . . with the intent to use it as a means of committing . . . a violation of . . . Section 11364.7" and in relevant part described the property to be found and seized as follows: "1. Drug paraphernalia used to convert, prepare, store, conceal, ingest, inhale, or otherwise introduce cocaine into the human body, including, but not limited to, kits intended or designed for use in converting, processing or preparing controlled substances (particularly cocaine), containers, spoons, and other devices intended for or designed for use in ingesting controlled substances (particularly cocaine), chamber pipes and carburator [*sic*] pipes . . . ."

With these search warrants, police seized a large number of items from the three business establishments. Many of the items, for example, baggies, pipes, and bottles, would be innocuous in the abstract, but taken together, the listed items would be recognizable to an experienced narcotics officer as accessories commonly associated with drug traffic and use.

---

[1]Penal Code section 1540 provides: "If it appears that the property taken is not the same as that described in the warrant, or that there is no probable cause for believing the existence of the grounds on which the warrant was issued, the magistrate must cause it to be restored to the person from whom it was taken."

[2]Health and Safety Code section 11364.7, subdivision (a), provides: "It is a misdemeanor for any person to deliver, furnish, or transfer, or to possess with intent to deliver, furnish, or transfer, or to manufacture with intent to deliver, furnish, or transfer, drug paraphernalia, knowing, or under circumstances where one reasonably should know, that it will be used to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance in violation of this division [relating generally to controlled substances]."

Health and Safety Code section 11014.5 defines " '[d]rug paraphernalia' " as "all equipment, products and materials of any kind which are designed for use or marketed for use" in any of several enumerated ways related to illegal use of controlled substances, and states that the term "includes, but is not limited to," a long list of specific examples. (Subd. (a).) Section 11014.5 also defines " 'marketed for use' " (subd. (b)) and lists factors to be considered "in addition to all other logically relevant factors" in determining whether an item is "drug paraphernalia." (Subd. (c).)

Several individuals were then accused by misdemeanor complaint of violations of Health and Safety Code section 11364.7. Owners of the three business establishments moved in municipal court for return of the seized materials, relying on the first clause of Penal Code section 1540. After several hearings, the municipal court granted the motion as to all but a few items. Respondent superior court denied the People's writ petition. The People then petitioned this court for a writ of mandate. (Cf. Code Civ. Proc., § 904.1, subd. (a).)

In the municipal court, counsel for the owners expressly limited himself to the contention, under the first clause of Penal Code section 1540, that "the property taken is not the same as that described in the warrant," but then attempted to argue as well that the legal description of "drug paraphernalia" was "so vague and broad as to constitute no description." The municipal court ruled that Penal Code section 1540 "is not the proper vehicle" by which to test for vagueness and overbreadth; it addressed only the question whether the items seized were those described in the warrant.

On this question, the owners' position was and is, in essence, that the warrant description must be understood to incorporate the narrower Health and Safety Code section 11014.5 definition of "drug paraphernalia," construed in light of cases such as *Hoffman Estates* v. *Flipside, Hoffman Estates* (1982) 455 U.S. 489 [71 L.Ed.2d 362, 102 S.Ct. 1186]. *Hoffman Estates* provided relatively strict definitions for the terms "designed for use" and "marketed for use" in a local head shop ordinance in Illinois, in the context of a contention that the ordinance was void for vagueness. (455 U.S. at pp. 497-503 [71 L.Ed.2d at pp. 370-375].) If the description in the warrant before us were so augmented, then it would be at least arguable that most, if not all, of the items ordered returned by the municipal court would not fit the description. The municipal court agreed with the owners: "The Court finds that the defendants made a *prima facie* showing that the majority of the items seized were not drug paraphernalia, i.e., designed or marketed [for] use with illegal drugs under the criteria set forth by the Federal Courts. Accordingly, the burden shifted to the People to show that the materials did meet the criteria. [Citing *People* v. *Bonanza Printing Co.* (1969) 271 Cal.App.2d Supp. 871, 874 (76 Cal.Rptr. 379).] The People have failed to meet their burden as no evidence was presented to show that the items were either intentionally displayed for illegal drug usage or that they possessed features designed by the manufacturer for such usage."

██ The People argue primarily that the inquiry under the first clause of Penal Code section 1540 should have focused on the description which appeared on the face of the search warrant, without statutory or judicial amplification.

We agree with the People. ■ The emergence of Penal Code section 1538.5 as "the principal device for suppressing unlawfully seized evidence" (*Theodor* v. *Superior Court* (1972) 8 Cal.3d 77, 92 [104 Cal.Rptr. 226, 501 P.2d 234]; cf. *id.*, at pp. 91-95 *passim; People* v. *Butler* (1966) 64 Cal.2d 842, 845 [52 Cal.Rptr. 4, 415 P.2d 819]) supports the People's analysis: Questions whether the warrant describes with sufficient particularity (cf. Witkin, Cal. Crim. Procedure (1983 supp., part 2) Exclusion of Illegally Obtained Evidence, § 1006, pp. 241-243; 2 LaFave, Search and Seizure (1978) Search Warrants, § 4.6, pp. 94-113) property properly subject to seizure (Pen. Code, § 1524; cf. Witkin, *supra*, § 986 et seq., p. 215; 2 LaFave, *supra*, § 4.1, pp. 3-23) should be raised by suppression motion, and adjudicated, under Penal Code section 1538.5 ■ As part of a coherent statutory scheme, the first clause of Penal Code section 1540 must be understood to *assume* the validity of the warrant description and to ask no more than whether that description fits the items seized.

The owners' arguments and the municipal court's ruling blur this distinction: Their references to *People* v. *Bonanza Printing Co., supra,* 271 Cal.App.2d Supp. 871, an obscenity case which dealt not with the first but with the second clause of Penal Code section 1540, are evidence of misdirected analysis. When it accepted and applied the owners' proposal that extrinsic definitions be read into the warrant for purposes of the first clause, the municipal court misapplied Penal Code section 1540. It follows that its order should have been set aside, and that the municipal court should have been directed to consider only whether the items seized met the warrant description without reference to extrinsic definitions.

We do *not* pass upon the validity or scope of California's new statutory definition of "drug paraphernalia," or upon the relevance of the federal decisions to the California drug paraphernalia statute. None of these issues is before us.

Let a peremptory writ of mandate issue directing respondent superior court to vacate its order of September 27, 1983, and to issue its writ of mandate directing the Municipal Court of the State of California, Santa Clara County Judicial District, San Jose Facility, to vacate its memorandum of decision and orders filed August 5, 1983, in action numbers C3106394, C3106540, C3106544, C3106811, C3106813, and C8300397, and to conduct a further hearing for the purposes of determining, under the first clause of Penal Code section 1540, whether the items seized upon execution of the search warrants met the warrant description without reference to extrinsic definitions. The stay of all proceedings heretofore ordered herein shall be

dissolved upon entry of a new order of the said municipal court resolving the Penal Code section 1540 issues.

King, J., and Haning, J., concurred.

The petition of real parties in interest for a hearing by the Supreme Court was denied April 19, 1984.