John R. KOIS, Plaintiff,

v.

Harold O. BREIER, Individually and as Chief of Police of the City of Milwaukee, Wisconsin, E. Michael McCann, Individually and as District Attorney of the County of Milwaukee, Wisconsin, Their Agents, Assistants, Successors, Employees, Attorneys and All Persons Acting In Concert or Cooperation With Them or at Their Direction or Under Their Control, Defendants.

Civ. A. No. 70–C–97.

United States District Court,
E. D. Wisconsin.

May 5, 1970.

James M. Shellow and Robert H. Friebert, Milwaukee, Wis., for plaintiff; Percy L. Julian, Jr., Madison, Wis., of counsel.

John J. Fleming, City Atty., by Thomas E. Hayes and Theophilus C. Crockett, Asst. City Attys., Milwaukee, Wis., for defendant Harold A. Breier.

John Peter Genrich, Asst. Dist. Atty., and William D. Gardner, Deputy Dist. Atty., Milwaukee, Wis., for defendant E. Michael McCann.

## OPINION AND ORDER

REYNOLDS, District Judge.

Plaintiff brings this action for declaratory and injunctive relief. He seeks a judgment declaring that the February 13–26, 1970 Vol. 2 No. 26 (#52) issue of the newspaper Kaleidoscope is not obscene as a matter of law, and injunctive relief from alleged threatened prosecution under state obscenity statutes.

Kois is the editor and publisher of the newspaper Kaleidoscope which is sold and distributed in Milwaukee and the State of Wisconsin. Defendant Breier is the Chief of Police of the City of Milwaukee. Defendant McCann is the District Attorney of Milwaukee County, Wisconsin.

Kois commenced this action on February 19, 1970, by filing the complaint which alleged that certain state obscenity statutes (§§ 944.21, 944.22, and 944.-23, Wis.Stats.) were unconstitutional and that the defendants had threatened

plaintiff with prosecution under these statutes without hope of ultimate success, with the purpose of discouraging plaintiff's exercise of First Amendment rights.

On February 20, 1970, a hearing on plaintiff's motion for a temporary restraining order was held, and upon consent of defendants, by their counsel, such order was entered. By the terms of that order, which has been in effect until now, the defendants were enjoined from interfering with the distribution or sale of the February 13–26 issue of Kaleidoscope and from prosecuting plaintiff for any alleged violation arising out of the sale or distribution of that issue of Kaleidoscope pending a final determination of plaintiff's motion for preliminary injunction. In the course of that hearing counsel for plaintiff withdrew those portions of the complaint which challenged the constitutionality of the state statutes. The court indicated that plaintiff could renew his constitutional challenge if he wished.

On February 24, 1970, counsel for defendant Breier and plaintiff conferred with the court, at which time defendant Breier made a motion to convene a three-judge court to consider the case.

On March 2, 1970, there was a hearing on plaintiff's motion for declaratory judgment and preliminary and permanent injunction and on defendant Breier's motion to convene a three-judge court.

## ISSUES

The issues before the court are:

1. Should defendant Breier's motion to convene a three-judge court to consider the case be granted?

2. Does this court have jurisdiction over plaintiff's motions for declaratory and injunctive relief?

3. Is the February 13–26 issue of the newspaper Kaleidoscope obscene as a matter of law?

4. Should plaintiff's request for injunctive relief restraining defendants from enforcing the state obscenity statutes against plaintiff for the sale and distribution of the subject issue of Kaleidoscope be granted?

## THREE-JUDGE COURT

Defendant Breier contends that a three-judge court should be convened to consider this case. Plaintiff's complaint originally alleged the unconstitutionality of several state statutes as the basis for injunctive relief. Section 2281, 28 U.S.C., requires a three-judge court to consider cases where the operation of a state statute is sought to be enjoined on the basis of the unconstitutionality of such statute. Defendant Breier maintains that the original complaint is determinative of the question of whether a three-judge court should be convened, and that since the complaint herein contained allegations requiring a three-judge court, a single-judge court cannot now consider the case.

Breier further contends that even if plaintiff could have amended his complaint so as to remove the constitutional challenge and consequent requirement of a three-judge court, such amendment was not effected in this case.

Rule 15(a) of the Federal Rules of Civil Procedure provides that "A party may amend his pleading once as a matter of course at any time before a responsive pleading is served * * *." Plaintiff withdrew those portions of his complaint dealing with the constitutionality of the state statute on February 20, 1970, at the hearing on plaintiff's motion for a temporary restraining order, well before the defendants filed their answers on March 9, 1970.

The transcript indicates that counsel for plaintiff withdrew the constitutional challenge in the following colloquy with the court:

"THE COURT: You are withdrawing those portions of the complaint where you are challenging the Constitutionality of the Statute?

"MR. JULIAN: For the moment.

"THE COURT: Well, as of today. You can always renew it if you wish to do so." (Tr. p. 7)

Whether or not plaintiff could have reamended his complaint to bring the constitutional challenge before the court either before or after the defendants filed their answers is not at issue now. Plaintiff requested that the constitutional challenge to the Wisconsin statutes be withdrawn, and I granted his request. Plaintiff could have withdrawn his constitutional challenge without leave of the court by amending his complaint before the defendants' answers were filed. 3 Moore, Federal Practice, ¶ 15.07[2], at 850 (2d ed. 1968). Defendant Breier has in no way indicated that the withdrawal of plaintiff's constitutional challenge was not timely or that it would prejudice defendants' case. Therefore, I find that plaintiff's withdrawal of his constitutional challenge to the state obscenity statutes effected a timely amendment of the complaint. The challenge to the Wisconsin obscenity statutes is no longer before this court and is not an issue in the case. This is no longer a suit for injunctive relief against operation of a state statute on the ground of alleged unconstitutionality of the statute, and therefore a three-judge court is not required to consider the case. Therefore, defendant Breier's motion to convene a three-judge court is denied.

## JURISDICTION

It is plaintiff's contention that this court has jurisdiction over his claim for injunctive relief under 28 U.S.C. § 1343 [1] and 42 U.S.C. § 1983 [2], and further, that the court has independent jurisdiction under 28 U.S.C. § 1331 [3] to grant declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202 regarding the obscenity *vel non* of the newspaper.

### § 1343 Jurisdiction

Plaintiff alleges that defendants have threatened him with prosecution under the state obscenity statutes and that such threats deprive him of his First Amendment rights. Section 1343, 28 U.S.C., provides for the original jurisdiction of district courts in actions to redress the deprivation of constitutional rights under color of state law. The Su-

---

1. 28 U.S.C. § 1343. "Civil rights and elective franchise.

    "The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

    *       *       *       *       *

    "(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States;

    "(4) To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote."

2. 42 U.S.C. § 1983. "Civil action for deprivation of rights.

    "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

3. 28 U.S.C. § 1331. "Federal question; amount in controversy; costs.

    "(a) The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States.

    "(b) Except when express provision therefor is otherwise made in a statute of the United States, where the plaintiff is finally adjudged to be entitled to recover less than the sum or value of $10,000, computed without regard to any setoff or counterclaim to which the defendant may be adjudged to be entitled, and exclusive of interests and costs, the district court may deny costs to the plaintiff and, in addition, may impose costs on the plaintiff."

preme Court has recognized that the threat of prosecution can constitute an effective prior restraint on free expression. Bantam Books v. Sullivan, 372 U. S. 58, 83 S.Ct. 631, 9 L.Ed.2d 584 (1963). See also Poulos v. Rucker, 288 F.Supp. 305 (D.C.Ala.1968). Therefore, jurisdiction over plaintiff's claim for injunctive relief under 28 U.S.C. § 1343 and 42 U.S.C. § 1983 is proper.

### § 1331 Jurisdiction

For a federal district court to have § 1331 jurisdiction of an action it is necessary that the amount in controversy exceed $10,000 and that the action arise under the Constitution, laws, or treaties of the United States.

■■ As the Supreme Court recently noted, the intent of Congress in enacting § 1331(a) was to provide a broad jurisdictional grant to the federal courts. Powell v. McCormack, 395 U.S. 486, 515, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969). The *Powell* court said:

" * * * It has long been held that a suit 'arises under' the Constitution if a petitioner's claim 'will be sustained if the Constitution * * * [is] given one construction and will be defeated if [it is] given another.' Bell v. Hood, 327 U.S. 678, 685, 66 S. Ct. 773, 90 L.Ed. 939 (1946). * * *" Id. 395 U.S. at 514, 89 S.Ct. at 1960.

The resolution of the plaintiff's claim that the subject issue of Kaleidoscope is not obscene depends entirely on the construction of the First Amendment of the Constitution. This is the kind of suit that is authorized by § 1331(a). Id. 395 U.S. at 516, 89 S.Ct. 1944. See also Poulos v. Rucker, 288 F.Supp. 305 (M.D. Ala. 1968), where the court exercised § 1331 jurisdiction over the plaintiff's request for declaratory judgment as to the obscenity *vel non* of certain publications.

■ While plaintiff has satisfied the subject matter requirement of § 1331, he has not satisfied the requirement that the matter in controversy exceed $10,000. Plaintiff in an uncontro-

verted affidavit states that if he does not prevail on the obscenity question, he will be prosecuted under the state obscenity statutes, and that such prosecution threatens him with advertising and sales losses and postponement of a new publishing venture which could result in total losses in excess of the requisite $10,000. When determining the amount in controversy, the collateral effect of the judgment, such as operating as an estoppel in a subsequent proceeding or affecting another suit by virtue of *stare decisis*, cannot be taken into consideration. 1 Moore, Federal Practice, ¶ 0.-91[2] (2d ed. 1964). The effect of a declaratory judgment that the subject newspaper is not obscene would only operate to benefit plaintiff more than $10,000 insofar as that judgment operated collaterally to discourage state criminal obscenity prosecution. Therefore, I find that under the law the matter in controversy is not over $10,000 and that this court does not have independent jurisdiction to entertain plaintiff's request for declaratory relief under § 1331.

### Pendent Jurisdiction

■ However, it is well settled that once the jurisdiction of a federal district court has been properly invoked, the court acquires jurisdiction to decide all related claims arising out of the same transaction or dispute. United Mine Workers of America v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); Hurn v. Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148 (1933); Gulickson v. Forest, 290 F.Supp. 457 (E.D. N.Y. 1968). Plaintiff's claim for declaratory relief arises out of the same dispute as does the claim for injunctive relief. I therefore find that this court has pendent jurisdiction over the claim for declaratory relief.

In addition, in the course of considering challenges to state obscenity statutes and the actions of state officials concerning allegedly obscene publications or films in § 1983 actions, the courts have made determinations as to the obscenity *vel non* of the subject material. Cam-

bist Films, Inc. v. State of Illinois, 292 F.Supp. 185 (N.D. Ill. 1968); Henley v. Wise, 303 F.Supp. 62 (N.D. Ind. 1969).

For these reasons, I find that it is proper for this court to consider the subject issue of Kaleidoscope and to determine whether or not, as a matter of law, it is obscene.

## DECLARATORY RELIEF

■ The Supreme Court summarized its previous decisions in the obscenity area in Redrup v. New York, 386 U.S. 767, 770–771, 87 S.Ct. 1414, 1416, 18 L. Ed.2d 515 (1967), when it said:

"Two members of the Court have consistently adhered to the view that a State is utterly without power to suppress, control, or punish the distribution of any writings or pictures upon the ground of their 'obscenity.' A third has held to the opinion that a State's power in this area is narrowly limited to a distinct and clearly identifiable class of material. Others have subscribed to a not dissimilar standard, holding that a State may not constitutionally inhibit the distribution of literary material as obscene unless '(a) the dominant theme of the material taken as a whole appeals to a prurient interest in sex; (b) the material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters; and (c) the material is utterly without redeeming social value,' emphasizing that the 'three elements must coalesce,' and that no such material can 'be proscribed unless it is found to be *utterly* without redeeming social value.' "[John Cleland's A Book Named] Memoirs [of a Woman of Pleasure"] v. [Attorney General of Com. of] Massachusetts, 383 U.S. 413, 418–419 [86 S. Ct. 975, 977–978, 16 L.Ed.2d 1]. Another Justice has not viewed the 'social value' element as an independent factor in the judgment of obscenity. *Id.*, at 460–462 [86 S.Ct. 975, 998–999] (dissenting opinion)."

It is clear to me that whatever standard is applied, the material in question is not obscene and is constitutionally protected free speech.

This issue of Kaleidoscope, a so-called "underground newspaper," is essentially a publication of political and social commentary interspersed with a number of crude or vulgar words and pictures. The newspaper contains articles dealing with the ravages of strip mining in the Cumberlands and the resultant human misery; the noise and air pollution potential of the new Boeing 747 airplane; the ecological crisis facing this country; book and record reviews; letters from readers; a schedule of local dances, poetry readings, and musical performances; and an article ridiculing a new section of another local paper. A large section of the newspaper entitled "Gay Liberation Special" contains a number of articles of a political and social nature dealing with the many problems of homosexuals in our society, reporting on what appears to be an awakening political and social consciousness of homosexuals as reflected in movement toward organization of homosexual groups to further their political and social goals. There are also editorial cartoons of a state court judge, the Chief of Police of Milwaukee, the United States Attorney for the Eastern District of Wisconsin, and a locally well-known businessman. Interspersed in this material are several photographs and drawings of nude males, a drawing and discussion of sexual activity, and several instances of language and references that are not of generally accepted journalistic usage.

While extracted segments of the newspaper viewed in isolation might meet the Supreme Court's obscenity tests, it is clear that when viewed as a whole the newspaper is not obscene. Taken as a whole, the paper is an expression of political and social opinion. Some of those opinions are perhaps radical and generally unpopular, and the newspaper may appear to many to be in bad taste, but nonetheless it is constitutionally protect-

ed free speech under the First Amendment.

The defendant district attorney argues that the material concerning homosexuals is intended primarily for an audience of homosexuals and that such material will appeal to their prurient interests. However, it is clear that the dominant theme of the paper is not concerned with homosexuality. Moreover, the record contains no evidence that this material will appeal to the prurient interest of homosexuals. Therefore, I find that the dominant theme of the material taken as a whole does not appeal to a prurient interest in sex.

Nor is the paper utterly without redeeming social value. The paper includes, as indicated above, articles dealing with the national ecological crisis and the ravages of strip mining in the Cumberland Valley. While these articles may be particularly derisive of our society, they are no less socially valuable than similar articles appearing in a myriad of contemporary publications. These articles in Kaleidoscope are not included as mere shams to save the paper from being condemned as obscene, but rather are an integral part of the publication as a whole.

Therefore, because at the very least two of the three elements required to coalesce for a work to be adjudged obscene, Memoirs v. Massachusetts, 383 U. S. 413, 86 S.Ct. 975, 16 L.Ed.2d 1 (1965), have not been satisfied, I find that this issue of Kaleidoscope is not obscene as a matter of law, and a declaratory judgment to that effect will be entered.

## INJUNCTION

For an injunction to issue against the enforcement of a state statute, it is necessary that there be a showing of irreparable harm and, absent facial invalidity of a state statute, a showing that the local officials have maintained a continuous bad faith course of conduct disregarding the constitutional rights of the petitioner. Dombrowski v.

Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965).

While there is no probable cause of prosecuting plaintiff under the state obscenity statutes because the issue of Kaleidoscope is not obscene as a matter of law, there has been no showing of a conscious disregard for plaintiff's constitutional rights. Kois has not established a sufficient record in this case to support the contention that the threat of prosecution discloses a bad faith attempt to impose continuing harrassment in order to discourage constitutionally-protected activity. Defendants entered into the initial temporary restraining order restraining prosecution voluntarily while awaiting a hearing on preliminary and permanent injunction and the opinion of this court. This voluntary stay is compelling evidence of the defendants' lack of bad faith. However, if defendants should proceed in a manner inconsistent with the terms of the opinion and order of this court, such action could well be strong evidence of bad faith and weigh heavily in favor of plaintiff's right to equitable relief. Accordingly, the Court will retain jurisdiction of this case, as did the three-judge district court in Henley v. Wise, 303 F.Supp. 62, 64 (N. D. Ind. 1969) in a similar situation, to issue an injunction should such relief become necessary.

It is therefore ordered:

1. That the temporary restraining order previously entered in this action be and it hereby is dissolved.

2. That plaintiff's request for declaratory judgment declaring that the February 13–26, 1970 Vol. 2, No. 26 (#52) issue of the newspaper Kaleidoscope is not obscene as a matter of law is granted.

3. That plaintiff's motion for preliminary and permanent injunctions restraining defendants from enforcing the state obscenity statutes against plaintiff for the sale and distribution of the February 13–26, 1970 Vol. 2, No. 26 (#52) issue of the newspaper Kaleidoscope is denied.