*Supp. 5 Opinion
ZACK, J.
The complaints in the captioned cases were each for violations of Penal Code section 311.2 in the distribution of allegedly obscene material. Two of the cases pertained to Andrews, two to Smith, two to Moya, and one each to Ross and Cox. They were each tried and convicted on the respective charges on a consolidated basis.
The questions raised which we will consider are (1) May the material, on the existing record, be found to be obscene within Penal Code section 311, subdivision (a)? (2) Were the defendants allowed proper cross-examination of the prosecution’s principal witness, Deputy Hippier? (3) Was there sufficient evidence of defendants’ scienter of the character of the material under Penal Code section 311, subdivision (e)?
(1) Both as a matter of substantive constitutional factual review of this court (Zeitlin, v. Arnebergh (1963) 59 Cal.2d 901, 908-909 [31 Cal. Rptr. 800, 383 P.2d 152, 10 A.L.R.3d 707]), and as error urged in refusal of a jury instruction to that effect, appellants argue that Penal Code section 311.2 prohibits distribution of only “hard-core” pornography under section 311, subdivision (a) and that no “graphic depiction” of sexual activity is shown in the material (People v. Noroff (1967) 67 Cal.2d 791, 794, fn. 6 [63 Cal.Rptr. 575, 433 P.2d 479]). Consequently, the judgment, it is said, must be reversed on the existing record and the action dismissed. We agree it must be reversed, but do not hold that it must be dismissed.
The Supreme Court of California, in Zeitlin, made a detailed review of the issues disposed of by the majority in Roth v. United States (1957) 354 U.S. 476 [1 L.Ed.2d 1498, 77 S.Ct. 1304]. It declared (Zeitlin v. Arnebergh, supra, page 918) commercial obscenity, i.e., “hard-core” pornography, is utterly without redeeming social value, and lies outside the protection of the First Amendment. It held that material which comes within the tests of Roth and Penal Code section 311, subdivision (a) is “hard-core” pornography. To the extent, then that appellants contend that Zeitlin imposes any judicially created modification or limitation upon the tests of obscene material prescribed by Roth and Penal Code section 311.2 by its references to “hard-core” pornography, their position is not well taken.
If the tests of section 311, subdivision (a) are those of “hardcore” pornography, may the instant material come within the section? We hold that it may. Each of People’s Exhibits 1 through 4 consists of a bound collection of largely full-page 8 inch by 11 inch photographs in color. In most of them, a nude man is entangled in various positions with one or two women, who are either nude, or their erogenous zones *Supp. 6 are uncovered. In all of them, as a part of such mutual contact, the erogenous zones, if not actually touching, are the center of focus, not only of the camera, but of the participants, by their eyes, mouth, hands or other portions of their bodies. Much of the material we find to be a photographic record strongly suggestive of the foreplay of various types of sexual intercourse. In the case of two of the exhibits (People’s 3 and 4), the impression which arises from a view of the pictures is confirmed by a text, or story fine, which minutely describes sexual developments between the participants toward sexual climaxes, sometimes in the grossest of language.
We hold that the exhibits, each taken as a whole, including the text, where present, may be held to be graphic depictions of sexual activity (People v. Noroff, supra, p. 794, fn. 6) and may come within each element of Penal Code section 311 subdivision (a). We reject the view that where the material consists only of photographs the measure of a violation under the statute is a mechanical one which is satisfied only when they explicitly show actual penetration or contact between the erogenous organs or zones of the actors, particularly where the concomitant story goes farther. Although, as thus formulated, the test is less specific and mechanical than that which appellants assert, it is no less definite in its results when applied to the material in these cases presented on this record. There may be occasions where, for a variety of reasons, a court must hold that material lacking actual penetration, et cetera, is not strong enough in its suggestion of sexual activity or of its depiction of activity which is in the procession of acts immediately leading to copulation; the material in each of these cases, on this record, is not among them. We do not decide that the material involved is obscene so that such finding would be the law of the case upon the retrial ordered herein. Appellants assert that, on the existing record, the material is not obscene and that the actions must be dismissed. We hold to the contrary, that the material, on this record, may properly be held obscene on a retrial. We are, however, reversing the the judgments resulting from the first trial for the reasons hereinafter discussed. (See Scherr v. Municipal Court (1971) 15 Cal. App.3d 930 [93 Cal.Rptr. 556].)
(2) We find that the trial judge improperly and prejudicially restricted the cross-examination of Deputy Hippier, without whose expert testimony as to the substantial excess of community standards of candor, predominant appeal to prurient interest, and utter lack of redeeming social valué there would have been insufficient evidence for the convictions. Hippier said that his opinion as to People’s Exhibit 1 being within the tests of section 311, subdivision (a) was based on a statewide survey, his “broad and extensive background in this field,” and upon his knowledge *Supp. 7 of the laws of the State of California and of the United States. Yet defense counsel was restrained from cross-examining as to whether, under California law, only “hard-core” pornography is not protected (by the Constitution). As we have seen, the phrase “hard-core” pornography does occur in the case law and was a legitimate object of inquiry of an expert in the obscenity field.
At another point, the witness said that under the law nudity without sexual conduct is not obscenity. When asked if the showing of sexual activity had to be “graphic,” the witness said he believed the word “graphic” was not necessary. Whereupon, defense counsel sought to examine him on his testimony on another case in Whittier on the subject. An objection was sustained. Here, too, the word “graphic” with reference to depiction of sexual activity was used in People v. Noroff, supra (67 Cal.2d 791, 794) and was a proper subject of cross-examination of one presented by the People as an expert on obscenity as to the basis of his opinion (Evid. Code, § 802). It was also proper to question him as a ground for credibility impeachment for prior inconsistent statements (Evid. Code, § 780, subd. (g)) as to his testimony in another case. Such line of cross-examination was particularly important, and the denial thereof prejudicial, where the defense sought to convince the jury that the photographs not explicitly showing actual penetration of some orifice of the body, the material did not contain “graphic depiction[s] of . . . sexual activity.” (People v. Noroff, supra.)
Again, the witness had testified that an issue of “Playboy Magazine,” taken as a whole, is not obscene, because the greater part of it would have some redeeming social value, whereas, People’s Exhibits 1 and 2 had no redeeming social value. On recross-examination, a defense question as to the witness’ qualifications to decide redeeming social value was ruled irrelevant. The utter lack of redeeming social importance is one of the three tests of obscenity enacted into section 311, subdivision (a). The basis for the witness’ opinion on that subject, including his qualifications pertaining thereto, was a legitimate subject of cross-examination (Evid. Code, § 801, subd. (b)). That the court had already ruled Deputy Hippier qualified as an expert did not remove the subject of his qualifications from cross-examination (Evid. Code, § 785, 801, subd. (b)). The same error was made in refusing cross-examination as to the effect of the Roth case (Roth v. United States, supra) on the possible obscenity of material showing nude men and women standing close to each other.
Lest there be misunderstanding, we do not hold that an expert in obscenity cases is necessarily subject to cross-examination on the entire law of obscenity. As in other cases, the scope of reasonable cross-examina *Supp. 8 tion of an expert will depend on the nature and scope of his opinion, the reasons therefor, and the nature and sufficiency of his qualifications to give the opinion. Where, as here, the opinion is stated to be based on a state-wide survey, his broad and extensive background in the field, and his knowledge of the law, the scope of cross-examination, particularly in a criminal case, should be at least as broad. (Evid. Code, § 721, subd. (a).) If the defense does not have such opportunity, it does not have a fair trial. (See People v. Flores (1936) 15 Cal.App.2d 385, 401 [59 P.2d 517].)
(3) Even if the above errors did not exist, the judgments would have to be reversed as to defendants Andrews and Smith for lack of proof of knowledge of the character of the material (Pen. Code, § 311, subd. (e).) The showing that the defendants Andrews and Smith owned the establishments where the sales were made was not enough to prove they knew the character of the material. (People v. Bromberg* (Oct. 5, 1971) Crim. A. No. 10253.) There was no evidence that either of them ever saw, bought, or read the specific material, or participated personally in its sale. A state may not prohibit as a crime the dissemination of obscene material without requiring a showing of the defendant’s knowledge of the character thereof. (Smith v. California (1959) 361 U.S. 147 [4 L.Ed.2d 205, 80 S.Ct. 215].)
The judgments, and each of them, are reversed, and the causes remanded for a new trial.
Whyte, P. J., and Wong, J., concurred.

This opinion was not certified for publication.